[Cite as *In re Perez*, 2011-Ohio-4267.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: DANIOLO PEREZ

MOUSSA SOW

       Applicant

Case No. V2010-50892

Commissioners:
Susan G. Sheridan
William L. Byers IV
E. Joel Wesp

## ORDER OF A THREE-COMMISSIONER PANEL

{1}On April 23, 2009, the applicant, Moussa Sow, filed a compensation application as the result of the murder of Daniolo Perez. On August 11, 2009, the Attorney General issued a finding of fact and decision determining that all necessary jurisdictional requirements were met to qualify Daniolo Perez as a victim of criminally injurious conduct. However, the applicant's claim for an award of reparations was denied since the applicant did not present documentation to verify he incurred funeral expense, travel expenses to attend the funeral and criminal proceedings, or dependent's economic loss.

{2}On May 21, 2010, the applicant filed a supplemental compensation application. On August 24, 2010, the Attorney General issued a finding of fact and decision concerning the supplemental compensation application. The Attorney General denied the applicant's request for reimbursement of travel expenses to Dakar, Gambia to "inform and brief" the victim's family with respect to the criminal conduct of March 25, 2009. These travel expenses did not fall within the compensatory

parameters of the Victims of Crime Compensation Act which provides reimbursement of travel expenses related to the funeral or criminal proceedings.   On September 3, 2010, the applicant submitted a request for reconsideration.   On October 28, 2010, the Attorney General rendered a Final Decision.   The Attorney General refused to modify

the decision concerning travel expenses and also found the applicant was not responsible for the funeral expense incurred.  On November 18, 2010, the applicant filed a notice of appeal from the October 28, 2010 Final Decision of the Attorney General.  Hence, a hearing before commissioners Ostry, Sheridan, and Wesp was held on March 17, 2011 at 10:25 A.M.

{3}The applicant, Moussa Sow, and his attorney, Byron Potts appeared, while Assistant Attorney General Matthew Karam represented the state of Ohio.

{4}The applicant asserted that he incurred funeral expense in the amount of $7,367.94.  While initially the bill was paid by the decedent's employer, Ahmad Aldamen, the applicant contends that the evidence will show he repaid the employer this amount.  The applicant related that he incurred $483.30 for airfare to Dakar, Gambia for the memorial service for his brother and was required to pay $200.00 to an Iman who performed the service.

{5}The Attorney General stated that this case presents two issues.  First, whether the applicant could prove he repaid Ahmad Aldamen for the funeral without providing any documentation and second, whether the expenses incurred for the memorial service fall under the plain language of the statute.

{¶6}Moussa Sow was called to testify.  Mr. Sow revealed that the decedent was his brother and that he and the decedent were the only members of their extended family to reside in the United States.  His brother was murdered while working at a gas station in Columbus, Ohio.  Applicant's counsel then presented Mr. Sow with Applicant's Exhibit 2, a funeral expense bill from Rutherford Funeral Homes and Crematories in the amount of $7,367.94.  While the bill reflects that it was paid by Ahmad Aldamen, the decedent's boss, the applicant contended that he repaid Mr. Aldamen and expects reimbursement of this amount from a reparations award.   The

applicant asserted he has tried to locate Mr. Aldamen on numerous occasions to obtain documentation of this transaction but has been unsuccessful.

{7}Next, the applicant's attorney presented Mr. Sow with Applicant's Exhibit 1, a Delta electronic ticket receipt for airfare from Columbus, Ohio to Dakar, Gambia via New York JFK Airport and a return flight in the amount of $483.30. The departure date was November 7, 2009 and the return date was January 9, 2010. Mr. Sow testified the purpose of this flight was to attend a memorial service for his brother. He related the delay in his departure, approximately six months after his brother's death, was due to his attending criminal proceedings involving his brother's killer. It was not until after the conviction that he felt he could leave so a memorial service could be performed in Gambia. Finally, Applicant's Exhibit 3 was introduced. This document showed that Mr. Sow had changed $200.00 U.S. dollars for $5,000.00 Dalasi. The Dalasi was given to the Iman who performed the memorial service.

{8}Upon cross-examination, Mr. Sow stated he repaid Mr. Aldamen for the funeral prior to his departure to Gambia. He recalled that he made two payments in cash to Mr. Aldamen, one for approximately $6,000.00 and the other for the remaining balance of the funeral expense. He again related he had no receipt of his transaction and has been unable to contact Mr. Aldamen so this repayment could be verified. Upon further questioning, Mr. Sow revealed that he had received donations from a local Gambian organization and from Gambians across the country to help defray the cost of the funeral. Mr. Sow believed he received approximately $3,000.00 via check and an unknown amount of cash donations. While he asserts a bank account was set up at Fifth Third Bank for the collection of this money he retained no record of this account. He conceded that he received a call from the Bureau of Workers' Compensation since

his brother was killed at his job but due to his unfamiliarity with the Bureau he did not file a claim or receive any money from them.

{9}Mr. Sow explained that a delay occurred after his arrival in Gambia in November until the subsequent memorial service in January in that, as the eldest son, he was responsible both for informing all family members throughout West Africa of the reason for his brother's demise and for organizing the memorial service. Finally, he stated he received no receipt from the Iman who performed the service since this would be against the custom and practice of the Islam faith. Whereupon, the testimony of Moussa Sow was concluded.

{10}The applicant offered Applicant's Exhibits 1, 2, and 3 into evidence without objection from the Attorney General.

{11}In conclusion, the applicant argues that he established his case by a preponderance of the evidence and he should be granted an award for funeral, travel and Iman expenses. Conversely, the Attorney General states the applicant failed to present any documented evidence that he ever repaid Mr. Aldamen for the funeral expense. Also, questions remain as to the amount of money the applicant received for donations and his failure to utilize a readily available collateral source, the Bureau of Workers' Compensation.

{12}Finally, the Attorney General contends the plain language of the statute should be followed. Inasmuch as the statute does not specifically mention memorial services the travel and Iman expenses should not be reimbursed. Whereupon, the hearing was concluded.

{13}On April 6, 2011, the court issued a notice informing the parties that pursuant to Rule 1.12(b) of the Rules of Professional Conduct, Commissioner Randi M. Ostry recused herself from the case at bar and requested the parties file written

notification by May 6, 2011 as to whether they want the motion decided by the two remaining panel commissioners who sat at the hearing; or they wanted a randomly selected third commissioner to review the case file and hearing and reach a decision together with the two sitting commissioners; or they want a rehearing of the matter.

{14}On June 2, 2011, a hearing was held before this panel of commissioners whereupon the parties request that Commissioner Byers review the DVD of the hearing and render a decision together with commissioners Sheridan and Wesp.

{15}R.C. 2743.51(N)(1) & (2) state:

"(N)(1) 'Funeral expense' means any reasonable charges that are not in excess of seven thousand five hundred dollars per funeral and that are incurred for expenses directly related to a victim's funeral, cremation, or burial and any wages lost or travel expenses incurred by a family member of a victim in order to attend the victim's funeral, cremation, or burial.

"(2) An award for funeral expenses shall be applied first to expenses directly related to the victim's funeral, cremation, or burial. An award for wages lost or travel expenses incurred by a family member of the victim shall not exceed five hundred dollars for each family member and shall not exceed in the aggregate the difference between seven thousand five hundred dollars and expenses that are reimbursed by the program and that are directly related to the victim's funeral, cremation, or burial."

{16}From review of the file and with full and careful consideration given to the testimony at the hearing and the arguments of the parties, we find the applicant failed to prove he incurred the expense for his brother's funeral.  The evidence in the case file clearly reveals that Ahmad Aldamen, the brother's employer paid for the funeral expenses.

The bill from the Rutherford Funeral Home confirms this fact.  The applicant was unable to present any documented evidence which proved, by a preponderance of the evidence, that he reimbursed Ahmad Aldamen for this expense.  The applicant has failed to meet his burden of proof with respect to this issue.

{17}However, with respect to the cost of the airfare and payment to the Iman, the applicant has satisfied his burden of proof.  We find the testimony of the applicant compelling concerning his role as a family leader, who was obligated by tradition to gather the family together to inform them about his brother's death and have a memorial service in his brother's honor.  While this case does not stand for the proposition that all memorial services qualify for reimbursement as a funeral expense, based on the particular facts of this case coupled with the fact that the service was held in Dakar and required local custom and religious practice be observed, we believe the applicant's airfare of $483.30 should be reimbursed.  Furthermore, the $200.00 the applicant gave to the Iman to perform the memorial service is also a compensable funeral expense.

{18}Therefore, the October 28, 2010 decision of the Attorney General is reversed and the applicant is granted an award of reparations in the amount of $683.30, which represents reimbursement of funeral expense pursuant to R.C. 2743.51(N).

IT IS THEREFORE ORDERED THAT

{19}1)   Applicant's Exhibits 1, 2, and 3 are admitted into evidence;

{20}2)   The October 28, 2010 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicant;

{21}3)   This claim is remanded to the Attorney General for payment of the award in the amount of $683.30;

{22}4) This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{23}5) Costs are assumed by the court of claims victims of crime fund.

 

 

_____
SUSAN G. SHERIDAN
Commissioner

 

 

_____
WILLIAM L. BYERS IV
Commissioner

 

 

_____
E. JOEL WESP
Commissioner

ID #I:\VICTIMS\2010\50892\V2010-50892 Perez.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:

 

 

Filed 6-24-11
Jr. Vol. 2279, Pgs. 53-59
Sent to S.C. Reporter 8-23-11